# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

|  |  |
|---|---|
| JEREMIAH FOSTER, as trustee of the STM Liquidating Trust,<br><br>      Plaintiff,<br><br> vs.<br><br>DENNIS CONNER, an individual, and JOHN DOES 1−10,<br><br>      Defendants. | **CV-18-84-GF-BMM**<br><br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ON COUNT I AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS II−IV.** |

Plaintiff Jeremiah Foster ("Foster") filed an Amended Complaint against Defendant Dennis Conner ("Conner") and John Does 1−10, alleging claims related to the bankruptcy of several Shoot the Moon entities ("STM"). Doc. 39. Count I of the Amended Complaint alleges *Preferential Transfer* under 11 U.S.C. §§ 547 & 550. *Id.* at 7. Foster filed a Motion for Summary Judgment on Count I. Doc. 64. Conner filed a Cross-Motion for Summary Judgment on Count I and for attorney fees. Doc. 68. Counts II−IV of the Amended Complaint allege *Fraudulent Transfer* under 11 U.S.C. §§ 548 & 550, Mont. Code Ann. § 31-2-333(1)(b), and Mont. Code Ann. § 31-2-334(1). Conner filed a Motion for Summary Judgment on

Counts II−IV and for attorney fees.  Doc. 71 at 9−11.  The Court held a hearing on September 28, 2020.  Doc. 104.


## BACKGROUND.

Foster alleges various claims against Conner that stem from loans and transfers made between Conner and STM.  Doc. 39 at 7−12.  Conner acquired a one-quarter membership interest in STM in 2005.  Doc. 90 at 7.  Conner provided STM multiple with loans over the subsequent years, including $1,000,000 in June 2012 and $200,000 in July 2012.  Doc. 70 at 4.

Conner expressed concerns in late 2012 regarding STM's financial situation.  Doc. 90 at 7.  Conner sought to relinquish any membership interest in STM.  *Id*. at 8.  STM and Conner reached a redemption agreement regarding Conner's membership interest under which STM would transfer the ownership of certain real property ("the bank property") to Conner.  *Id*.  Conner accepted the bank property subject to a secured debt owed to Global Mortgage and Credit, LLC, in August 2014.  *Id*. at 8−9.  Conner paid the debt to Global Mortgage with a loan that Conner financed through Prairie Mountain Bank.  *Id*. at 9.  Conner sold the bank property for $975,000.00 in December 2014 and assigned the lease to Steve Galloway for $975,000.00.  Doc. 39 at 7.  Conner paid the balance of the loan to Prairie Mountain Bank.  *Id*.

2

Conner and STM consolidated the 2012 loans with a promissory note in February 2014. Doc. 70−3 at 1. The promissory note required STM to repay $1,248,352.15 in weekly installments of $5,000 plus 10 percent interest. *Id*. at 6−10. STM made 74 payments to Conner between February 2014, and August 2015. Doc. 70−4 at 1.

On October 21, 2015, STM filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Montana. Doc. 39 at 3. Foster filed an Amended Complaint against Conner in federal district court on November 1, 2019. Doc. 39 at 1. Foster alleges the following claims: (1) the transfer of the bank property constitutes *fraudulent transfer* under 11 U.S.C. §§ 548 & 550, Mont. Code Ann. § 31-2-333(1)(b), and Mont. Code Ann. § 31-2-334(1); and, (2) the three payments made on the promissory note (7/27/15, 8/10/15, and 8/31/15) constitute *preferential transfers* under 11 U.S.C. §§ 547 and 550. *Id*. at 7−12. Foster asks the Court to grant summary judgment on the *preferential transfer* claim. Doc. 64. Conner asks the Court to grant summary judgment on the *preferential transfer* and *fraudulent transfer* claims. Doc. 68 & 71.

3

**LEGAL STANDARD.**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**COUNT I—PREFERENTIAL TRANSFER.**

The Bankruptcy Code, 11 U.S.C. § 547(b), authorizes a bankruptcy trustee to avoid any transfer of an interest of the debtor in property if the following five conditions are satisfied: (1) the transfer benefits a creditor; (2) the transfer was made on account of antecedent debt; (3) the transfer was made while the debtor was insolvent; (4) the transfer was made within 90 days of bankruptcy; and, (5) the transfer enables the creditor to receive a larger share of the estate than if the transfer had not been made. *Union Bank v. Wolas*, 502 U.S. 151, 154−55 (1991).

The fifth condition of a preferential transfer claim requires satisfying the "greater-amount test." *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421 (1985). To satisfy the "greater-amount test," the bankruptcy trustee must prove that the creditor received from the alleged preferential transfer a greater amount than the creditor would have received from the bankruptcy proceeding. The parties dispute the application of the greater-amount test in this case. The Court need not resolve this dispute, however, because Foster's claim for preferential transfer can be

resolved on other grounds.  The Court outlines below the parties' arguments on the greater-amount test for context.

### CONNER'S ARGUMENT.

Conner contends that the Court should grant summary judgment on Count I—*Preferential Transfer* because Foster cannot prove that Conner received a greater amount from the transfers than Conner would have received from a hypothetical Chapter 7 Bankruptcy proceeding.  Doc. 69 at 5−7.  STM transferred $20,123.08 to Conner during the 90-day preferential period of the STM bankruptcy.  Doc. 39 at 8. Conner has a claim against the bankruptcy estate for $923,351.12.  Doc. 69 at 6. Conner's claim amounts to roughly 4.3% of STM's $21,400,000.00 total unsecured debt.  As of April 2020, the bankruptcy estate had approximately $800,000 to distribute to unsecured creditors.  *Id*.  Conner argues, that even if the trustee fails to acquire any more assets, Conner would be entitled to at least $34,000.000 (4.3% of $800,000) in a Chapter 7 bankruptcy proceeding.  *Id*. at 8.  Conner argues that Foster fails to satisfy the greater-amount test because Conner would receive approximately $14,000 more from a Chapter 7 Bankruptcy proceeding ($34,000) than he had received in transfers ($20,123.08).  *Id*.

### FOSTER'S ARGUMENT.

Foster seeks a different application of the greater-amount test.  Doc. 94. Foster contends that § 547(b) requires that Foster must establish that unsecured

creditors "would receive less than 100% of his claims in a chapter 7 bankruptcy if the transfer had not been made." Doc. 65 at 9 (citing *Palmer Clay Prods. Co. v. Brown*, 297 U.S. 227, 229 (1936)). Foster alleges that if "the distribution in bankruptcy is less than one-hundred percent, any payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made." *Id*. at 10 (citing *In re Lewis W. Shurtleff, Inc.*, 778 F.2d at 1421).

The holding in *Palmer Clay* results from the application of the greater-amount test to a unique set of circumstances. 297 U.S. at 229. *Palmer Clay* determined that when a creditor receives a transfer of any amount during the preferential period, *plus* the amount the creditor was entitled to receive from a Chapter 7 liquidation, that transfer necessarily would be a preferential transfer under § 547(b) when the estate distributes less than 100 percent of the debtor's unsecured debt. *In re Lewis W. Shurtleff, Inc.*, 778 F.2d at 1420−21 (citing *Palmer Clay Prods. Co. v. Brown*, 297 U.S. at 229). Foster concludes that Foster satisfied the greater-amount test because Conner received $20,123.08 in transfers and the bankruptcy estate will distribute less than 100 percent of the debtor's unsecured debt.

### ORDINARY COURSE OF BUSINESS EXCEPTION.

The Bankruptcy Code provides several exceptions to a preferential transfer claim. 11 U.S.C. § 547(c). Under the ordinary course of business exception, the

6

trustee may not avoid a transfer under § 547(b) if the transfer was (1) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (2) made in the ordinary course of business or financial affairs of the debtor and the transferee; and, (3) made according to ordinary business terms.  11 U.S.C. § 547(c)(2)(A−C).  Conner bears the burden of proving these elements by a preponderance of the evidence.  *In re Food Catering & Housing*, *Inc*., 971 F.2d 396, 398 (9th Cir. 1992).

### (1) DEBT INCURRED IN THE ORDINARY COURSE OF BUSINESS.

The first element of the ordinary course of business exception requires that Conner prove that the debtor made the transfer in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee. 11 U.S.C. § 547(c)(2).  This element requires an inquiry into the "pattern of interaction between the actual creditor and the actual debtor in question."  *In re Ahaza Sys., Inc.*, 482 F.3d 1118, 1124 (9th Cir. 2007) (emphasis omitted).

Conner loaned STM a large amount of money on multiple occasions between 2010 and 2012.  Doc. 70 at 4.  Conner loaned STM $201,300.00 in November 2010; $60,000.00 in February 2011; $1,000,000.00 in June 2012; and, $200,000 in July 2012.  *Id*.  Conner and STM consolidated the 2012 loans into a promissory note in the amount of $1,248,356,15 in February 2014.  Doc. 70−3 at 1.  These loans present a pattern of interaction between Conner and STM in which STM regularly secured

loans from Conner.  *See In re Ahaza Sys.,Inc.*, 482 F.3d at 1124. Conner satisfies the first element of the ordinary course of business exception.  *See* § 547(c)(2).

## (2) PAYMENT IN THE ORDINARY COURSE OF BUSINESS.

The second element of the ordinary course of business exception requires that the transfer be made in the ordinary course of business or financial affairs of the debtor and the transferee.  11 U.S.C. § 547(c)(2)(A).  Conner provided history of payments on the promissory note that STM made to Conner.  Doc. 70−4.  STM made 74 payments of $5,000 plus 10 percent interest to Conner.  *Id*.  STM made 44 payments between February 2014 and December 2014.  *Id*.  STM made 30 payments from January 2015 through August 2015.  *Id*.  STM made these payments on a near-weekly basis.  *Id*.  These payments ranged from $6,698.08 (August 31, 2015) to $7,752.83 (February 21, 2014).  *Id*.

The amount and regularity of payments proves particularly revealing in determining whether STM made the transfers in the ordinary course of its business.  *See In re Food Catering & Housing, Inc.*, 971 F.2d at 398.  STM's payments to Conner prove remarkably consistent in amount and regularity.  There exists no distinguishable quality between the final 3 payments at issue here and the proceeding 71 payments except for the fact that the final 3 payments fell within the preferential period of § 547.  *Id*.  Conner satisfies the second element of the ordinary course of business exception.  *See* 11 U.S.C. § 547(c)(2)(A).

### (3) ACCORDING TO ORDINARY BUSINESS TERMS.

The third element of the ordinary course of business exception requires that the transfer be made according to ordinary business terms. 11 U.S.C. § 547(c)(2)(B). This element "does not pose a particularly high burden for creditors." *In re Healthcare.com*, 504 F.3d 775, 791 (9th Cir. 2007). Conner's expert witness asserted that the interest-principal payments that STM made to Conner during this time period were not unusual for the restaurant industry, and that nothing about these payments would be considered "an aberration in the restaurant industry." Doc. 70 at 14−15.

Foster contends STM's financial distress removes the transfers from being made according to ordinary business terms. Doc. 94 at 10. This argument ignores the reality of preferential transfers and the ordinary course of business exception. The ordinary course of business exception applies to preferential transfers under § 547, and preferential transfers require that the debtor be insolvent. 11 U.S.C. § 547(b). The statute's effect requires that every preferential transfer excluded under the ordinary course of business exception necessarily occurs while the debtor is in financial distress. *Id*.

The burden for § 547(c)(2)(B) is not particularly high. *In re Healthcare.com*, 504 F.3d at 791. Nothing in the record indicates that the 74 payments STM made to Conner between February 2014 and August 2015 fell outside the ordinary business

terms of the restaurant industry.  *See In re Healthcare.com*, 504 F.3d at 791.  Conner satisfies the third element of the ordinary course of business exception.  *See* §547(c)(2)(B).

### CONCLUSION.

Foster filed a Motion for Summary Judgment on Count I for *preferential transfer*.  Doc. 64.  Conner filed a Cross-Motion for Summary Judgment on Count I for *preferential transfer* and attorney fees.  Doc. 68.  The parties disagree about the applicable test for the final element of a preferential transfer—the greater-amount test.  The Court need not resolve this dispute because Conner established that the transfers are excluded from scope of § 547 preferential transfers under the ordinary course of business exception.  *See* § 547(c)(2).  Foster's Cross-Motion for Summary Judgment on Count I for *preferential transfer* is denied.   Conner's Motion for Summary Judgment on Count I for *preferential transfer* is granted.


## COUNTS II−IV—FRAUDULANT TRANSFER.

The Amended Complaint alleges three different claims against Conner for fraudulent transfer.  Doc. 39.  Count II alleges fraudulent transfer under 11 U.S.C. § 548.  *Id*. at 9−10.  Count III alleges fraudulent transfer under Mont. Code Ann. § 31-2-333(1)(b).  *Id*. at 10−11.  Count IV alleges transfer fraudulent as to creditors under Mont. Code. Ann. § 31-2-334(1).  *Id*. at 11−12.

Each of these claims for fraudulent transfer requires the plaintiff to prove that the debtor transferred property without receiving something of "reasonably equivalent value." *See* 11 U.S.C. § 548; Mont. Code Ann. § 31-2-333(1)(b); Mont. Code Ann. § 31-2-334(1).  The moving party must present evidence of the value transferred and the value received.  The trier of fact must then determine, after considering the totality of the circumstances, whether the transfer was for "reasonably equivalent value." *In re Jordan*, 392 B.R. 428, 441 (Bankr. D. Idaho 2008).

Foster must prove that STM transferred the bank property to Conner without STM having received something of "reasonably equivalent value." *See* 11 U.S.C. § 548; Mont. Code Ann. § 31-2-333(1)(b); Mont. Code Ann. § 31-2-334(1).  STM transferred the bank property to Conner in August 2014 allegedly to redeem Conner's membership interest in STM.  Doc. 39 at 6.  Conner received the bank property subject to secured debt owed to Global Mortgage and Credit, LLC.  *Id.* Foster must prove that STM did not receive in this transfer something of "reasonably equivalent value." *See* 11 U.S.C. § 548; Mont. Code Ann. § 31-2-333(1)(b); Mont. Code Ann. § 31-2-334(1).

As the record currently stands, the value of the bank property and Conner's membership interest remain disputed material facts.  *See* Fed. R. Civ. P. 56(a).  The Court cannot determine at this stage of litigation whether either party would be

11

entitled to judgment as a matter of law.  *Id*.  The parties remain free at trial to introduce evidence of the terms of the transfer of the bank property from STM to Conner, including the bank property's outstanding secured debt, the value of the bank property at the time of the transfer, and the value of Conner's membership interest in STM.  The trier of fact will determine whether these values constituted a transfer of "reasonably equivalent value" under 11 U.S.C. § 548, Mont. Code Ann. § 31-2-333(1)(b), and Mont. Code Ann. § 31-2-334(1).  *See In re Jordan*, 392 B.R. at 441.  The Court denies Conner's motion for summary judgment on Counts II−IV (Doc. 71) because these disputed material facts regarding the alleged fraudulent transfer must be resolved.  *See* Fed. R. Civ. P. 56(a).

### "REASONABLY EQUIVALENT VALUE" AND INDIRECT BENEFIT.

Foster argues that he does not need to prove the value of the bank property to succeed with his fraudulent transfer claim.  Foster claims that STM necessarily received less than a "reasonably equivalent value" when it transferred the bank property to Conner because Conner provided nothing in return.  Doc. 90 at 15.  In short, Foster argues that something and nothing cannot be of "reasonably equivalent value."

Foster's analysis fails to consider the totality of the circumstances surrounding the transfer of the bank property.  *In re Jordan*, 392 B.R. at 441.  Conner did not provide STM direct consideration for the bank property, but determining

"reasonably equivalent value" requires considering the totality of the circumstances. The trier of fact may look beyond the terms of a *quid pro quo* transaction. The trier of fact may consider any indirect benefits that a party may have received if the benefits are sufficiently concrete and identifiable. *In re Fox Bean Co.*, 287 B.R. 270, 281 (Bankr. D. Idaho 2002).

STM transferred the bank property to redeem Conner's membership interest in STM. Doc. 39 at 6. Conner assumed the outstanding debt on the bank property owed to Global Mortgage and Credit, LLC. Doc. 90 at 7. The values of any benefit to STM remains unclear at this point. The parties remain free at trial to introduce evidence of these disputed values, including the bank property's outstanding secured debt, the value of the bank property at the time of the transfer from STM to Conner, and the value of Conner's membership interest in STM. The Court cannot in the meantime determine whether either party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court also cautions that Conner's efforts to introduce evidence of the benefit to STM in the form of the redemption of his membership interest in STM potentially opens the door to the introduction of evidence and testimony as to why STM chose to redeem Conner's membership interest and not interests of other members.

### *WHITE-STEVENS* AND EXPERT TESTIMONY.

Conner argues that Foster cannot prove as a matter of law that STM did not receive something for the bank property of "reasonably equivalent value."  In order to prove that STM did not receive something of "reasonably equivalent value," Foster must present evidence of the value of the bank property at the time of the transfer from STM to Conner.  Conner contends that Foster cannot prove the value of the bank property without expert testimony because the bank property suffers from structural problems.  Doc. 72 (citing *United First Federal Sav. and Loan Ass'n v. White-Stevens, LTD*, 833 P.2d 170, 173 (Mont. 1992)).  Conner overstates the holding in *White-Stevens*.  Foster has not disclosed expert witnesses to provide testimony related to the value of the bank property.  Expert witnesses do not represent the only mechanism, however, by which parties can introduce evidence of the value of real property.  *See Marsh*, 833 P.2d 170, 173 (Mont. 1992).

The Montana Supreme Court determined in *White-Stevens* that testimony regarding the cost of floodproofing a piece of property and the impact that the floodproofing would have on the value of that property fell beyond the ordinary training and intelligence of the average person.  *White-Stevens*, 833 P.2d at 173−75.  The Montana Supreme Court concluded that the parties needed to introduce such testimony through expert witnesses.  *Id*. at 171.  The Montana Supreme Court did

not proclaim that expert witnesses represent the only mechanism by which a party may introduce evidence of the value of real property.

The facts of *White-Stevens* make this clear.  An appraisal firm provided a borrower with appraisals for two properties in Missoula, Montana.  *Id*. at 171.  The lender relied on these appraisals when it subsequently provided the borrower with loans to purchase these two properties.  *Id.*  The borrower defaulted on the loans.  *Id.*  The lender purchased both properties at the sheriff's sale.  *Id.*  The lender resold the first property for less than half of the appraisal firm's appraised value.  *Id.*  The lender could not resell the second property because the property had potential problems with flooding.  *Id.*  The borrower sued the appraisal firm for negligent misrepresentations regarding the appraisal values. *Id.*

The lender's case required it to prove that the appraisal firm negligently had overstated the value of the appraised property.  Specifically, the lender needed to prove at trial that the true market value of the second property was significantly less than the appraisal firm's appraised value.  The lender lacked any other evidence of the second property's market value other than the appraisal firm's appraised value.  The lender did not have recent sale prices or appraisals related to those sales with which to attack the accuracy of the appraisal firm's appraisals.  This deficiency forced the lender to provide evidence that the character of the second property made its true market value significantly less than the appraisal firm's appraised value.  *Id*.

To this end, the lender called several witnesses to testify at trial that the second property required extensive floodproofing before anyone would ever buy the property. *Id*. at 172−74. The lender called a land-use consultant to testify regarding the costs of floodproofing the second property and the effect that the floodproofing would have on the property's true market value. *Id*. at 172. The appraisal firm objected to this testimony on the basis that this testimony constituted expert testimony that the lender should have disclosed before trial. *Id*. The trial court overruled the objection. *Id*. The Montana Supreme Court reversed. *Id*. at 174.

The Montana Supreme Court determined that the land use consultant's testimony regarding the cost of floodproofing the second property and the effect that the floodproofing would have on the property's value fell beyond "the range of ordinary training and intelligence." *Id*. at 173. As a result, the Montana Supreme Court concluded that the lender should have disclosed the land use consultant as an expert witness pursuant to Rule 26 of the Montana Rules of Civil Procedure. *Id.* at 173−75

The Montana Supreme Court did not conclude, as Conner argues, that expert witnesses represent the only mechanism by which parties may introduce evidence related to the value of real property. The Montana Supreme Court recognized the complicated interplay between the cost of floodproofing and the effect that floodproofing the second property would have on the property's market value.

Testimony regarding this complicated interplay fell outside the ordinary training and intelligence of the average person.  *Id*. at 173.  The lender had sought to present expert testimony under the guise of lay testimony without having disclosed the testimony during discovery as required by Rule 26.  The Montana Supreme Court was clear: "The days of disclosure are here."  *Id*.  *White-Stevens* serves as a shield to protect litigants from opposing parties who attempt to sneak in expert testimony under the veil of lay testimony without having complied with the disclosure requirements of Rule 26.  Connor now seeks to use *White-Stevens* as a sword to defeat Foster's fraudulent transfer claim.

The parties possess verified sale prices for the bank property from the purchase by STM in 2013 and the sale by Conner in December 2014.  These sales presumably involved arms' length transactions between willing buyers and willing sellers.  The 2013 and December 2014 sale prices, and any appraisal reports generated in connection with these sales, would represent probative evidence of the value of the bank property at the time that STM transferred the bank property to Conner in August 2014.  The parties remain free, subject to the Federal Rules of Evidence, to introduce evidence of the 2013 and December 2014 sale prices.

If Conner wishes to attack at trial the probative value of the 2013 and December 2014 sale prices, Conner would be in a similar situation as the lender in *White-Stevens*.  Conner would need to present, subject to the disclosure requirements

17

in *White-Stevens* and Rule 26 of the Federal Rules of Civil Procedure, expert testimony at trial explaining to the trier of fact why the 2013 and December 2014 sale prices do not accurately reflect the true market value of the bank property either at the time of those sales or at the time at which STM transferred the bank property to Conner in August 2014.  For example, similar to *White-Stevens*, this testimony could be that the bank property needed structural improvements, the extent of the structural problems, and the cost of making the structural improvements. *White-Stevens*, 833 P.2d at 172−74.  The Court does not attempt to predict all the possible theories that Conner might propound to attack the evidentiary value of the 2013 and December 2014 sale prices.

### THE LANDOWNER-WITNESS RULE.

Connor, as a former owner of the bank property, also may testify as to the value of the bank property during the time he was an owner.  *Marsh*, 575 P.2d at 38. Montana courts follow the "landowner-witness rule" in eminent domain cases where the parties dispute the value of the property.  The landowner-witness rule allows a landowner in eminent domain cases, subject to limitations, to estimate the value of the landowner's property.  *State v. Schumacher*, 590 P.2d 1110, 1115 (Mont. 1979) (internal quotations omitted).  The landowner need not be a technical expert.  *Id*.

Disputes on property value in eminent domain cases usually lack verified sale prices from recent sales.  The parties in this case have verified sale prices from 2013

and December 2014 that provide relevant evidence as to the value of the property in August 2014.  The Court sees no reason, however, why Conner would be excluded from testifying about what he believes was the value of the property during the time he owned it in light of the manner in which he acquired the property as part of alleged efforts by STM to redeem Conner's membership interest in STM.  *State v. Marsh*, 575 P.2d at 41.

The landowner-witness rule limits the landowner's testimony in several ways. The landowner's testimony regarding the value of the property must be reasonable. *Id*.  The trier of fact may use the actual 2013 and December 2014 sale prices to assess the reasonableness of Conner's testimony.  As the Court noted above, Conner remains free at trial to introduce evidence explaining to the trier of fact why Conner believes the 2013 and December 2014 sale prices do not accurately reflect the value of the bank property at the time STM transferred the bank property to Conner.  *See White-Stevens*, 833 P.2d at 171−74.  This testimony must comply with the disclosure requirements of *White-Stevens* and Rule 26 of the Federal Rule of Civil Procedure.

The landowner-witness rule also limits a landowner's testimony when the landowner seeks to testify about the value of the property regarding uses of the property different than how the landowner used the property.  *Marsh*, 575 P.2d at 41.  Before a landowner may testify to the value of his land for other uses, he must lay a foundation that demonstrates the basis for his knowledge. *See State v. Barnes*,

19

443 P.2d 16, 20 (1968). The landowner must "have some peculiar means of forming an intelligent and correct judgment . . . beyond what is presumed to be possessed by [persons] generally." *Marsh*, 575 P.2d at 41 (ellipsis in original, internal quotations omitted); *Cf. Cedar Creek Grazing Assoc. v. Encore Operating, L.P.*, 2007 WL 9709795 (D. Mont. 2007).

### CONCLUSION.

Conner filed a motion for summary judgment on Counts II−IV for *fraudulent transfer*. Doc. 71 at 9−11. A claim for fraudulent transfer requires Foster to prove that STM received something less than the "reasonably equivalent value" in exchange for the bank property. *See* § 548. There remains a dispute regarding the value of the bank property. Summary judgment is inappropriate. *See* Fed. R. Civ. P. 56(a).

### ORDER

Accordingly, **IT IS ORDERED**:

- Conner's motion for summary judgement and attorney fees (Doc. 68) is **GRANTED** in part and **DENIED** in part.

   1. Conner's motion for summary judgment on the preferential transfer claim is **GRANTED**. Count I *preferential transfer* of the Amended Complaint (Doc. 39) is **DISMISSED** with prejudice.

2.  Conner's motion for attorney fees is **DENIED**.  Both parties shall bear their own costs.

- Foster's motion for summary judgment (Doc. 64) on the preferential transfer claim is **DENIED**.

- Conner's motion for summary judgment on the fraudulent transfer claim and attorney fees (Doc. 71) is **DENIED**.

DATED this 13th day of November, 2020.


_____
Brian Morris, Chief District Judge
United States District Court